Dennis Fisher for Mr. Banjo, and before my time starts... Mr. Fisher, again, I was just going to say the same thing before the clock starts running. You have a request, which I think we will take up immediately after the argument and the merits. All right. And it won't count on you and your time. Thank you. So let's just go to the merits. I thought it would be fair to do it first. Dennis Fisher for Mr. Banjo. So this case distills down to five almost bullet points about issues that have come up here. And the first is... I think we're around the long filing delay of five months or so in terms of the, you know, the appeal here. And well within the mine run of California, delays in the cases that were cited just the other day, even by my opposing colleague citing Judge O'Scann, the case in which Judge O'Scann sat on the Chaffer litigation. That recent case, yeah, the Supreme Court's case in Chavez. See whether you can distinguish those and tell me why your case doesn't fall a proper because of those precedents. This case is, as I say, Chavez says we look at what California does and we are concerned with two things, the length of the delay and whether the delay is unexplained. So you have to explain the delay here too. Yes. I certainly hope we have. Let's hear how you do it. Well, I certainly think our pleadings were pretty darn good about that. But I might suggest... Let me be specific. Typically 30 to 60 days is about a recognizable time within which to file. This was a second petition. Yes. He didn't file for five months. Yes, right. The same period of... Let's say 60 days is the outside limit. What justifies taking five months? You look at the Grevilleus declarations that indicated they are, I believe, J and O. That was our investigator who took over the case after the original investigator died. What he did for this long period of time, trying to get information. And we, and I will take responsibility as the appellate counsel for the first time, we cognizant of California procedure laid out in In re Robbins and In re Gallego, the two cases at 18 Cal 4th, which cite In re Clark, the case at 5 Cal 4th, all cited in the briefs. And in those cases, the Supreme Court said there is a mechanism that requires diligence, not unreasonable delay, and when you have facts that trigger the filing of a petition, you've got to file it without unreasonable delay. And that happened with the first one when we got Mr. Galletta, the fellow that was eventually found not credible by the Supreme Court judge. I feel like I'm kind of tape recorded this morning, but I'm bothered by the factual finding in the record by the Superior Court judge, which I believe is at excerpts of records 21 and 22, that after the evidentiary hearing that was conducted on November 12th, where your first witness was called and discredited. Galletta. Yes. The judge went on to say that the second petition relies upon people who were readily available and should have been presented during the extensive proceedings on the first petition and therefore finds there was no reasonable diligence during that. I ask this Court, please read our declarations in support of that. We have demonstrated justification. Like, if we didn't justify what a task it was to find these three people, one of whom had moved nobody. Banjo didn't know about any of them. Well, here's the problem I've got. Okay. It's a statutory problem. 28 U.S.C. Section 2254E1 says that we must defer to the factual findings of the state court unless the petitioner can show by clear and convincing evidence that that fact is clearly erroneous. And unfortunately for Mr. Banjo, the same evidence that is being offered here was considered by the Los Angeles County Superior Court in making that factual finding. No, it wasn't, Your Honor. Well, he had the three witnesses. No, he didn't have the three. No. Oh, but he didn't find he denied the motion. And here's the important point. Procedurally, he denied the motion for new trial. He said, this is a problem. It should have been done sooner. I disagree totally with his findings. It's the clearest of error on the showings we have made factually. But putting that aside, the procedure was that he treated it as a motion for new trial under California law. Under California law ---- Well, but does it matter, though? Sure it does. It wouldn't be an independent adequate procedural ground. Well, that's what I'm trying to test here. I did not have, I don't think he's implied us with a transcript of the actual hearing itself in the California Superior Court, the collateral evidentiary hearing on the new trial motion. There was none. There was none. Oh, no. So we don't know. That's right. We don't know how much of this information was provided to the Superior Court. It was all provided. It was all provided. I assure you it was provided. Please look at it. I'll take your representation, but that doesn't alleviate my concern. My concern is if that information was before the finder of fact and he entered an adverse finding to you, how can we meet 2254? Number one, he could be wrong. Well, there's certainly that problem. And we have argued that. And he is wrong. And we have made the demonstration. Number two, he didn't rely on it. He instead went back to mentioning Mr. Goleta, who has nothing to do with it, and said, I still remember that witness, Goleta, and I found him not credible. He's the one who got off the plane and insisted on testifying. It's really apples and oranges because Goleta had nothing to do with these three except this was a man who wouldn't cooperate with a trial attorney at the beginning, as our declarations show. He wouldn't talk to anybody about this. And he was the defense had to file because under Gallego-Robbins, when you finally get somebody, you've got to file a habeas petition in state court. That's the state requirement. We did it. But N. Ray Robbins says that you only can do what you should have knew or should have known. Look at the Robbins decision for Chief Justice's lengthy analysis, which guides California practitioners to this day. We followed that. We made the showing that we didn't know, couldn't have known, shouldn't have known, shouldn't be held to that burden, and we made it to Judge Johnson in the superior court where it should have been made. Why did you find out all this so-called additional information in terms of the timeline? I'm not sure I understand. Where it came from was that we finally got to the manager finally agreed to speak to the defense team. I guess I should say how much time elapsed from the time that you acquired all the information that you want us to consider until you filed the successive. That was 145 days. In that relatively brief period of time after Judge said, I don't find the letter credible, the first petition denied. I guess I don't understand what happens with that 145-day interregnum. What we did was we found somebody who would let us in, who would talk to us and said. The question is from that time until you filed, how much time elapsed? That's right. 145 days. No, no, no. From the time that you got all your ducks lined up until you filed your successive. I think we filed within 30, 45 days. We filed within 60 days of getting that. Is there anything in the record that tells us that? I think we alleged every date that we had, and I believe it's in the declarations. I cannot swear, however, that I got that date correct. It's within a five-month time frame that California over and over again has held is acceptable. And Chavez says look at California law. And when there are disputed issues, Your Honor, Chavez even says we accord as much. We indulge in the petitioner's view that we will give the petitioner every chance the petitioner gives us to consider. Look at the end of Chavez for Judge Breyer's very succinct quote, which I'm not able to suddenly state as effectively as he does. But in 145 days, the amount of work that went into finding this man in another city who happened to then admit very embarrassedly that the same woman who was the alleged victim in this case had propositioned him, so did these two young men living separately in the apartment. One had moved. One was there, which no banjo didn't know about that. And one of our complaints is that defense counsel at the trial didn't know about it, and he was ineffective for not investigating it. That's how we had to do it ourselves. We had to prove it ourselves. Very well. Thank you, counsel. Your time has expired. Thank you. We'll hear from the government. Good morning. May it please the Court. Deputy Attorney General Daniel Chang, appearing on behalf of Respondent Eppley. I won't repeat the same arguments I included in my answering brief, but I would like to emphasize a few points. The first point is, even assuming the superior court did not dismiss the second petition as untimely, petitioner's federal petition is untimely, and this is true for two alternative but equally valid reasons. First of all, under Dilsby-Smalls, petitioner's not entitled to interval tolling for that five-month period between his first superior court petition and his second superior court petition. And so under that basis alone, he's not entitled to interval tolling. His federal petition is untimely. Based on what? Upon the fact that under Dilsby-Smalls. Dils? D-I-L-S. D-I-L-S. Yes. That he's not entitled to interval tolling for that five-month period between, and I should be more precise, between the denial of his motion for reconsideration of his first superior court petition and his filing through counsel of his second superior court petition. If it takes a considerable amount of time to find what would be, I guess for lack of a better phrase, newly discovered evidence, the fruits of the investigation that was ongoing, materialized, and they're relevant, you're telling me that that's not a factor that we should consider in terms of the time span? Well, I think that evidence was presented before the superior court. The superior court was in the best position to make that determination. What is this Dill case all about, then? The Dill case, the issue presented in Dillsby – I think it's Dillsby-Smalls. I know it's Dills. The issue presented is whether or not the district court erred by denying that Federal petition as untimely. Now, this Court, the Ninth Circuit in the Dills case, did not find any interval tolling between his two successive petitions following the California Supreme Court. I think in that case it was – I think in that case it was 13 days. So under the – so based upon the old – based upon that aspect of Dills, the same applies here. A petitioner is certainly not entitled for interval tolling for the five-month period between his two superior court petitions. Counsel, I know that Mr. Fisher didn't have Chavez in front of him when he was referring us to some comments that Justice Breyer made at the end of the opinion. But I looked at the end of the opinion, and one thing that just leapt out at me is that he writes, we have found no authority suggesting nor found any convincing reason to believe that California would consider an unjustified or unexplained six-month filing delay reasonable. That does not seem to me to help Mr. Banjo's argument. It does not help Mr. Banjo. In fact, it's very – it undermines his position. I mean, because in this case, in Chavez, you know, this Court observed that – the Chavez Court mentioned a 30- to 60-day period. Obviously, five months is well beyond that 60-day period. But there are qualifications to that under specific circumstances, I guess. It's not an all, you know, or nothing proposition. There are circumstances which would, I guess, warrant a significant period of passage of time. Would you agree with that? Yes, I would. You say that these circumstances are not extant in this case, right? Yes, yes. And the reason for that, once again, is because this additional investigation and covering arguably the names of the prostitutes, you say, are not relevant or they should not be considered for some other reason. I'm saying that this evidence – I'm saying that the superior court found – Thumbs down on it. Yes. And it was a call for the superior court to make because the untimeliness and the unexplained delay and explanations is a matter of State law, which the superior court interpreted. Well, you know, your adversary says that the superior court was dead wrong is rife with all sorts of reasons why that's not a correct determination. I don't believe – To assess that under ADEPA. I don't believe that the superior court was wrong at all. In fact, the district court, in reviewing the superior court's order, denying the second petition, came to the same conclusion that although Petitioner's Council offered explanations for the delay, those explanations were unjustified. So the district court and the superior court came to the same precise conclusion that the delay was unjustified. So this is lights out under ADEPA. Yes. The second point I would like to make is even assuming – or I would like to address the decision in King v. Roe, which sort of providing the exception to the rule that successive petitions filed in the same court don't toll the federal statute of limitations. Now, Petitioner's Council's take advantage of King has to satisfy both requirements of King. Under the first requirement of King, we have to ask ourselves, was the second superior court petition offered to correct the deficiencies in the first superior court petition? And the answer is absolutely not. And the reason is because the first superior court – Under Roe v. Roe, the first witness was proffered to say the victim was a prostitute. The three additional witnesses were proffered to say the victim was a prostitute. The judge had ruled that he didn't believe the first witness, so Mr. Fisher went out and did what any good defense lawyer would do. He found three other witnesses who hopefully would be more credible to establish that fact. Wouldn't you concede that had the jury known that the victim of the kidnap-rape was a prostitute, that that might have produced a different result here on the charge? Well, no, because just because he offered additional declarations in a second petition to corroborate Gletta's testimony during the first hearing on the first petition does not make the first petition deficient. But the first petition was found deficient because the trial judge did not believe the only witness that the defense could find, the apartment manager, who would establish the victim's employment – I don't know quite how to put it – and when the judge didn't believe that witness's testimony, they found three more who would say the same thing. Why isn't that simply trying to plug the holes in the same claim? Well, respectfully, I would absolutely disagree with your conclusion that the first superior court petition was deficient because, first of all, it was extensively litigated. There was testimony taken. The court denied it on the merits in a well-reasoned decision. Because he didn't believe the testimony that the defense offered. But that doesn't make it deficient within the meaning of King. Because otherwise, what wouldn't be deficient within the meaning of King? I mean, hypothetically, a habeas petitioner could offer petitions and just get within a reasonable amount of time and then pull the statutory limitations indefinitely. Doesn't the rule, though, require a change in theory that it's an entirely new claim than the one that was previously litigated? That's how I always understood the rule to be. You mean between? Well, for example, the first claim here is that I was deprived of effective assistance of counsel because I didn't have the benefit of this witness, the apartment manager, who would help show that the victim was not a sweet, innocent woman who was just plucked off the streets of Hollywood. And therefore, that's an IAC claim. But then the petitioner comes back the second time with an entirely different claim. My counsel was ineffective because he failed to strike a juror that was left. That's a different claim. That's a different claim. In that case, there's no toll, right? Right. So I'm still having a hard time understanding your position that this isn't the same claim and that the defense isn't trying to bolster the weakness that the superior court judge found the first time out of the box. Well, I think what you're referring to is the court's, the Knight's Creek case in King. Yes. But to take advantage of the interval tolling provided by King, the petitioner has to satisfy those two requirements, one of which is to show that the first petition was sufficient. The second, and I would just submit on the arguments I made on that problem. Very well. We devoutly wish that the California legislature would resolve this question and would save a lot of cases in this court. I as well, Your Honor. Very well. Anything further? No. If not, the case just argued will be submitted for decision, and we will ask Mr. Fisher to come back to the podium. We have your filing, and we want to know what would be the latest date that we could rule on the merits and still accommodate your travel schedule. I think almost any date would be a problem just because of other intervening deadlines, and it just would work so much better if. . . Well, how about tomorrow? Well, tomorrow would be difficult, but I obviously have left the court with a lot of reading to do, and so I'm not inclined to be happy with that. I'd rather take my calls to Newcastle and come back afterwards and wrestle with this and whatever else comes in the office, and that, of course, assumes it doesn't go the right way, and that's why I brought the thing up before arguments so that kind of leave it at neutral territory. So you need us to give you at least until when in July? July 26th. It's the last Monday in July. It follows my return the end of the preceding week. So you're asking us to defer submission? Or decision. I'm not sure what. Whatever would work for the court, yeah. If the decision is filed July 26th or after, however it comes down, that would be most helpful to me, and that would be great. Very well. How about the state? Does the state have any objection? I have no objection. Well, we'll take it under advisement, Mr. Fisher. Thank you very much. The next case for argument is U.S. v. Castro.
judges: Block, O'scannlain, Tallman